UNITED STATES of America, Plaintiff,

and

Yonkers Branch-National Association for the Advancement of Colored People, et al., Plaintiffs-Intervenors,

v.

YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.

CITY OF YONKERS and Yonkers Community Development Agency, Third-Party Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Secretary of Housing and Urban Development, Third-Party Defendants.

No. 80 CIV 6761 (LBS).

United States District Court, S.D. New York.

May 28, 1986.

U.S. Dept. of Justice, Washington, D.C., Joshua P. Bogin, Kenneth Barnes, Michael L. Barrett, Sarah Vanderwicken, for plaintiff U.S. Civil Rights Div.

Michael H. Sussman, Yonkers, N.Y., for plaintiffs-intervenors N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, New York City, Michael W. Sculnick, Gerald S. Hartman, for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., John B. Weaver, John H. Dudley, Mark T. Nelson, Hall, Dickler, Lawler, Kent & Howley, New York City, Paul Whitby, for defendant Yonkers Bd. of Educ.

U.S. Dept. of Justice, Civil Div., Raymond M. Larizza, Calvin E. Davis, Kirk Victor, John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Renewal, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

### HOUSING REMEDY ORDER

SAND, District Judge.

Pursuant to this Court's liability findings of November 20, 1985, the evidence adduced at the remedial hearing, the supplemental findings set forth in the Opinion filed this date and the subsequent written submissions and oral arguments of the parties, the Court enters the following Order.

#### I. *Injunction*

The City of Yonkers, its officers, agents, employees, successors and all persons in active concert or participation with any of them, are permanently enjoined from:

A. blocking or limiting the availability of public or subsidized housing in east or northwest Yonkers on the basis of race or national origin;

B. confining public or subsidized housing to southwest Yonkers on the basis of race or national origin;

C. otherwise intentionally promoting racial residential segregation in Yonkers;

D. interfering with any person who is exercising or attempting to exercise his or her rights to equal housing opportunities;

E. taking any action intended to deny or make unavailable housing to any person on account of race or national origin, or

F. impeding or interfering with the successful implementation of the school desegregation remedy.

#### II. *Fair Housing Resolution and Office*

It is further ordered that the City shall take the actions described below to implement a fair housing program.

A. Within 30 days of the date of this Order, the City shall adopt a Resolution of the City Council setting forth the fair housing policy of the City of Yonkers: to assure equal housing opportunities and nondiscrimination in the provision of housing throughout the entire City.

B. Within 60 days of the date of this Order, the City shall adopt a Resolution of the City Council establishing a Fair Housing Office (FHO). The FHO shall have the

general responsibility to administer and implement the fair housing policy of the City and shall have the specific responsibilities described below. The City shall provide for adequate funding of the FHO throughout the life of this Order to ensure that it may fully carry out its responsibilities. The FHO shall establish a principal office and auxiliary offices as needed. The FHO shall publicize and promote the services it offers.

C. The FHO shall be headed by an Executive Director. The City shall provide funds for sufficient staff to carry out all of the FHO's responsibilities under this Order. Staff shall be hired by the Executive Director.

D. Within 30 days after passage of the FHO Resolution, the City shall submit to the United States and plaintiffs-intervenors the names and qualifications of not less than three candidates for Executive Director. Within 15 days thereafter, the United States and plaintiffs-intervenors shall respond to the City, indicating which, if any, of the candidates are acceptable. The City Manager shall, within 15 days of these responses, appoint a candidate from among those approved by both the United States and plaintiffs-intervenors. If the United States and plaintiffs-intervenors do not agree on the acceptability of any of the City's candidates, they shall include in their responses to the City the names of two or more candidates of whom they approve. If the City Manager finds none of these alternative candidates acceptable, this Court shall make the selection from among all those suggested by the parties. If the position of Executive Director becomes vacant during the life of the decree, the same procedure shall be followed in making subsequent appointments with time periods adjusted so that the position does not stay vacant for longer than 60 days.

E. In order for the other parties effectively to monitor the City's compliance with its obligations under this Order, the FHO shall submit to the City Manager and the United States and plaintiffs-intervenors each year during the life of this Order a proposed plan of activities and programs for the following year. The first such plan shall be submitted within 60 days of the appointment of an Executive Director. The United States and plaintiffs-intervenors shall have 30 days to make suggestions and comment on the plan before it is adopted by the City Manager. The City Manager must adopt a plan within 60 days of its submission.

The FHO shall also, on a semi-annual basis, report to the United States and the plaintiffs-intervenors on its activities for the period, including any difficulties encountered in carrying out its responsibilities under this Order. The FHO shall maintain detailed records of its activities and, upon reasonable notice, shall make these records available to the United States or plaintiffs-intervenors for review.

F. The FHO shall have the functions and responsibilities as set forth below:

"1. On an ongoing basis, the FHO shall review the activities of City agencies and offices for compliance with the fair housing policy of the City and the terms of this Order. The FHO shall, as it deems appropriate, make recommendations to such entities for actions to be taken to ensure compliance with the fair housing policy and this Order. In its reports to the United States and plaintiffs-intervenors, the FHO shall include full information about its reviews of City agencies' activities, any recommendations made by the FHO and any agency action taken in response to such recommendations.

"2. The FHO shall conduct educational programs for City and School District personnel, as well as for the community at large, to explain the City's fair housing policy and its enforcement efforts and obligations under this Order. Such programs should be designed to elicit support for the remedial efforts of the City and the Board of Education and to promote racial harmony in Yonkers. The FHO shall coordinate with the School Board the development and presentation of programs explaining fair housing policy to City school children. These educational programs shall be initiated as soon as possible (and, in no event, more than 60 days) after the appointment

of an Executive Director. To the extent appropriate and feasible, the FHO shall make use of the services and experience of private and public organizations which have developed programs to aid communities experiencing desegregation.

"3. The FHO shall collect information relating to housing needs and services, identify available rental and sales units within the City and provide information to homeseekers seeking housing on a nondiscriminatory basis and inform them of the availability of rental management companies, brokers, local lending institutions and agents. To assist the FHO in the gathering of this and any other relative information, the FHO shall have the right and authority to issue subpoenas which shall be enforceable by this Court. The FHO shall perform all of its functions on a continuing and nondiscriminatory basis throughout the life of this Order. The FHO shall ensure that all persons who request its assistance in obtaining housing are made aware of housing opportunities in all areas of the City. The FHO shall in particular make such information available to all persons in the City receiving Section 8 certificates who seek its services and the Municipal Housing Authority (MHA) shall inform persons obtaining certificates from that agency of the services available through the FHO.

"4. The FHO shall offer training concerning fair housing practices for persons in the housing rental and sales business. In addition, the FHO shall require and conduct training concerning fair housing practices for all persons responsible for the management or marketing of housing currently receiving City assistance or housing developed pursuant to the Order.

"5. The FHO shall ensure that all housing made available pursuant to the operation of this Order, and all housing otherwise receiving City, state or federal assistance, including housing in the southwest quadrant, be affirmatively marketed either through the FHO's own efforts or by review, approval and monitoring of the affirmative marketing plans of persons providing such housing. These efforts shall be designed to ensure that such housing is made available to all persons regardless of race or national origin and to ensure that persons who, based on past experience, have been least likely to occupy housing in a particular area of the City are fully informed of all housing opportunities there. The affirmative marketing plans shall be consistent with the occupancy priorities provisions (¶ VII) of this Order.

"6. The FHO shall coordinate with appropriate personnel from the Yonkers Board of Education to ensure that demographic data, school enrollment data, plans for housing and school program development and other information relevant to the remedial process is available to both the Board and the City.

"7. In providing information about available housing resources to persons seeking such information, the FHO also shall inform such persons of their rights to equal housing opportunities under the City's fair housing policy, state law and the Federal Fair Housing Act of 1968. The FHO shall alert persons seeking housing that a refusal to rent or sell on account of race or national origin or the imposition of different terms and conditions of rental or sale on account of race or national origin, is against the law, and shall encourage such persons to immediately report any suspected discrimination to the FHO. The FHO shall refer persons who wish to file complaints concerning suspected discrimination to, as appropriate, the Yonkers Commission on Human Rights, HUD, the New York Division of Human Rights, and the United States Department of Justice, and shall inform them of other assistance available through private non-profit agencies. The FHO shall assist complainants in communicating with the appropriate agencies and shall cooperate with such private and governmental agencies in their activities. The FHO shall not conduct or intervene in litigation proceedings except proceedings to enforce subpoenas issued pursuant to paragraph 3 hereof."

### III. *Transfer of Section 8 Administration*

It is further ordered that the City shall, within 60 days of the date of this Order,

seek HUD approval to transfer administration of its Section 8 existing program to the Yonkers Municipal Housing Authority (MHA). The FHO shall cooperate with the MHA in assisting certificate holders to obtain housing in all areas of the City on a nondiscriminatory basis and shall report on its own and the MHA's actions in this regard. HUD shall advise the Court and the parties within 30 days after such application whether it has approved the transfer, and if not, its reasons for such disapproval.

## IV. *Public Housing Units*

The City has previously committed itself to provide acceptable sites for 200 units of public housing as a condition for receiving its 1983 Community Development Block Grant ("CDBG") funds but has failed to do so. Pursuant to the 1984 HUD–NAACP Consent Order entered by this Court, HUD agreed to fund 200 units of public housing east of the Saw Mill River Parkway. The Consent Order provided that HUD would initiate procedures to reduce funding of the City's 1984–85 CDBG entitlement grant up to its full amount unless the City submitted to HUD for preapproval sites for at least 140 of the 200 units. But for the terms of this Order, HUD's authority to commit the 1984–85 CDBG funds would expire on September 30, 1986 (funds for the grant were appropriated in 1983 and "remain available until September 30, 1986." P.L. 98–45, 97 Stat. 223, July 12, 1983). HUD shall obligate the funds prior to the expiration of the funding authority in September if either (a) the City submits an acceptable Housing Assistance Plan (HAP) and other documentation as required by 24 C.F.R. § 570.302 prior to that expiration, or (b) such HAP and documentation are deemed submitted as herein provided. If the City submits all requisite documents, HUD shall obligate the funds, but make their availability conditional on the City submitting acceptable sites in East Yonkers for development of 140 units of public housing. (The Court finds such action would be consistent with HUD's obligations under paragraph 6.B. of the March 19, 1984 Consent Decree with the NAACP). The City would accept this condition by execution of a grant agreement containing the condition. Because, but for the terms of this Order HUD could not obligate the funds until the City submits all necessary documents, the City is hereby ordered to submit the required documents and execute the conditional grant agreement prior to the expiration of the funding authority, and to make timely submission of acceptable sites.

A. Accordingly, it is ordered that the City shall, within fifteen (15) days of the date of this Order, submit to HUD an acceptable HAP for the 1984–85 program year and other documentation required by 24 C.F.R. § 570.302. HUD shall advise within ten (10) days thereafter if the HAP and other documentation is acceptable. If the City fails to submit an acceptable HAP and other documentation as heretofore provided, plaintiff and plaintiffs-intervenors shall submit same to the Court and to HUD within the next five (5) days, and upon approval by this Court, said submission shall be deemed to be the HAP for the City of Yonkers for the 1984–85 program year and to have satisfied any and all HUD regulations and relevant statutes requiring such HAP.

B. It is further ordered that the City shall, within fifteen (15) days of the date of this Order, execute a grant agreement with HUD for the 1984–85 program year, with the condition that receipt of the grant depends on submission of acceptable sites for 140 units of family public housing. If the City fails to execute such grant agreement within fifteen (15) days from the date of this Order, plaintiff and plaintiffs-intervenors shall submit such an agreement to the Court and to HUD within the next ten (10) days, which grant agreement, upon approval by the Court, will be deemed to have been executed by Yonkers and to have satisfied any and all relevant statutes and HUD regulations requiring such agreement.

C. It is further ordered that the City shall within thirty (30) days of the date of this Order, submit to HUD for preapproval at least two sites for 140 units of family public housing, along with the necessary supporting documentation. HUD shall ad-

vise within fifteen (15) days thereafter whether the sites so submitted are approved. If the City fails to designate approved sites within the time periods set forth herein, and only if the City fails to make such designation, then the City will be deemed to have submitted as said sites such combination of the following sites *and* any other available sites as plaintiff and plaintiffs-intervenors shall designate and the Court shall approve:

(a) School 4. This site may be used for rehabilitation of the existing school building and new construction on that site, or new construction on the black top area, or some combination thereof;

(b) School 15 and the Walt Whitman School. If this provision becomes operative by virtue of the failure of the City to designate alternative sites, the School Board is hereby ordered to return the Whitman site to the City. The School Board may, if it wishes, reserve to itself rights to occupy such space on the Whitman site as shall be reasonably necessary and appropriate for teacher training and library storage facilities (the only uses for Whitman presently envisioned by the School Board).

Nonassisted units may also be placed on the aforesaid sites together with assisted units (*e.g.*, in an 80/20 ratio) provided that the total number of assisted units resulting from all site designations is 140 units.

D. It is further ordered that, within ninety (90) days of the date of this Order, the City shall submit sites to HUD, with all the necessary supporting documentation for the remaining 60 units of public housing committed by HUD pursuant to the 1984 Consent Order, which sites shall (unless otherwise authorized by the Court) be selected from a list contained in Exh-NAACP RH–16 (6 available privately-owned sites listed by the Yonkers Planning Director as suitable for development of public housing). Provided, however, that no privately owned sites from this list shall be submitted unless such submission is accompanied by either (a) an agreement of sale or assignable option between the MHA and the owner of the property or (b) a written agreement between the MHA and the owner under which the owner (or developer with an option that provides control) of the site agrees, if selected pursuant to the MHA's request for Turnkey proposals, to develop on a Turnkey basis a specified number of public housing units. The public housing units may themselves constitute the total development of the site or be a part of a larger (public/private) development on the site. The owner (or developer with an option that provides control) of the site must also agree to make the site available to the developer whose Turnkey proposal is selected should the proposal by the owner (or developer with an option that provides control) not be selected as a result of the MHA's request for Turnkey proposals.

E. It is further ordered that within ninety (90) days of site preapproval for the 140 units, the City shall cause the MHA to submit site development proposals, pursuant to 24 C.F.R. § 941.404, for the preapproved sites. If the City shall fail to submit site development proposals within the said time period, the plaintiff and plaintiffs-intervenors shall submit same to the Court and to HUD, which, upon approval by the Court, shall satisfy any and all statutory or regulatory requirements in the manner heretofore provided.

F. If Yonkers shall not comply with the directions contained in this Order so that the obligations which are its primary responsibility to designate sites and provide the necessary documentation for the development of the housing units referred to herein devolve on the plaintiffs and plaintiffs-intervenors, the Court may appoint a person expert in such matters to assist the Court and the parties in the preparation of the materials required pursuant to this Order, whose reasonable compensation shall be paid by Yonkers.

V. *Affordable Housing Trust Fund*

The City shall create an Affordable Housing Trust Fund to be administered by the Fair Housing Office in cooperation with HUD and the MHA. The City will initially fund the trust with not less than 25 percent of the CDBG funds presently allocated by

HUD to the City which minimum funding level may be diminished by 5 percent in each of the three succeeding years. In addition, the City will use its best efforts to secure additional funding for the trust fund from other governmental and private sources.

1. These funds will be used to foster the private development of low and moderate income housing by developers who will include 10 percent to 20 percent low and moderate income housing in their proposed development by providing the following incentives:

(i) write down of the site price of City-owned land;

(ii) finance surveys, market analyses and other similar pre-construction costs;

(iii) finance site infrastructure improvements such as sewers;

(iv) interim construction loan financing at below market interest rates;

(v) rental and/or mortgage subsidies to low and moderate income households in such developments; and

(vi) funds to low and moderate income families for rehabilitation.

2. Housing developments will be chosen by the Fair Housing Office to receive trust fund aid in order to advance racial and economic integration.

### VI. *Plan for Development of Additional Subsidized Housing*

The City` shall develop a Plan for the creation of additional subsidized family housing units (beyond the 200 units provided for in IV, *supra* ) in existing residential areas in east or northwest Yonkers. In such Plan, the City shall be free to provide for the utilization of such private and public funding resources as are available to it including the Affordable Housing Trust Fund. The Plan may provide for units of subsidized housing to be part of a larger development including market rate housing in such ratio (*e.g.,* 80 percent market rate; 20 percent subsidized) as shall be appropriate for the site and proposed development. The City may also provide such units by

requiring private developers to construct units of subsidized housing as a condition to obtaining variances or zoning changes, which subsidized units may be on the site in question or on another acceptable site or sites. The City may also provide in its Plan for the purchase and/or lease by MHA of available units in existing private condominiums, co-operatives or rental buildings throughout Yonkers. However, before such units may be included in the Plan, the City must have obtained realistic assurances that the units will in fact be available for this purpose (*e.g.,* the willingness of the seller; approval of cooperative board, if required; acceptable price, etc.). The City shall furnish to the Court and the parties a detailed statement of this Plan by November 15, 1986, which Plan shall contain the following:

(a) number of subsidized units proposed for construction or acquisition;

(b) location of such sites;

(c) rent levels or degree of subsidization;

(d) marketing or rent-up plans;

(e) such other information as shall be necessary or appropriate to enable evaluation of the feasibility of the Plan and the extent to which the construction or acquisition of the units in question will further the integrative goals of this Order.

The parties shall have thirty (30) days thereafter to comment on said Plan, after which time the Court may schedule a hearing to determine its adequacy in light of the violations and needs found to exist. In the event that the Plan shall be found to be inadequate, the Court reserves all of its rights and powers to make such modifications in the Plan or require such additional action by the City as the circumstances shall warrant.

### VII. *Occupancy Priorities*

A. Public Housing

The first priority for occupancy of public housing units made available in east Yonkers shall be given to eligible persons on the existing waiting list for such housing. The second priority for these units shall be given to families now living in southwest Yonkers who have school age children

whose attendance at Yonkers public schools will further the integrative objectives of this Court's School Desegregation Order of May 14, 1986.

#### B. All Other Units

The first priority for occupancy of all other units made available pursuant to this Order in east Yonkers shall be given to families now living in southwest Yonkers who have school age children whose attendance at Yonkers public schools will further the integrative objectives of the School Desegregation Order of May 14, 1986.

C. It is anticipated that the City will continue and accelerate its efforts to rehabilitate substandard housing throughout the City, although rehabilitation efforts in southwest Yonkers will not relieve the City from its other obligations hereunder. The first priority for occupancy of rehabilitated units in southwest Yonkers shall be given to eligible families living in east Yonkers who have school age children whose attendance at Yonkers public schools will further the integrative objectives of the School Desegregation Order of May 14, 1986.

The first priority for occupancy of rehabilitated units in east Yonkers shall be given to eligible families living in southwest Yonkers who have school age children whose attendance at Yonkers public schools will further the integrative objectives of the School Desegregation Order of May 14, 1986.

#### VIII. *City to Seek Available Financing*

The City shall submit timely and complete applications for CDBG entitlement funds for each program year during the pendency of this Order, including appropriately prepared Housing Assistance Plans, and assurances of compliance with all conditions placed on receipt of such funds. The City shall seek all other available forms of financial assistance from both public and private sources which are currently available or which become available during the pendency of this Order.

#### IX. *Notice*

The City shall not grant any zoning change or variance or issue a building permit to any private developer with respect to any of the sites referred to in this Order or listed on Exh-NAACP R.H. 16 without furnishing twenty (20) days prior written notice to the United States, the plaintiffs-intervenors and the Court.

#### X. *Funding*

The City shall provide funding for all of the measures set forth herein. The City shall also provide funding for all of the school desegregation measures required by this Court's Order of May 14, 1986.

The City and its agencies responsible for implementing the remedial Order shall maintain records of all actions taken pursuant to the Order. All such records shall be made available for review by the United States and plaintiffs-intervenors upon reasonable notice.

#### XI. *Jurisdiction*

This Court shall retain jurisdiction of this matter for five years. At the end of that period, the City may move for the dismissal of this case. Dismissal shall be granted unless, within thirty days from receipt of that motion, the United States or plaintiffs-intervenors object to the dismissal. If such an objection is made with sufficient particularity, the Court shall hold a hearing on the dismissal motion, and the objecting party shall have the burden to demonstrate why the motion should not be granted. If the objecting party fails to carry its burden, the case shall be dismissed with prejudice.

SO ORDERED.